In the Matter of COLONIAL PENN INSURANCE COMPANY, Appellant, v JACK SALTI et al., Respondents.

First Department, January 26, 1982

APPEARANCES OF COUNSEL

*Robert H. Fischler* of counsel (*Viscardi & Steinman, P.C.,* attorneys), for appellant.

*Steven DiJoseph* and *Siff & Newman, P.C.,* of counsel (*Reisman, Schwartz & Goldberg, P.C.,* attorneys), for respondents.

OPINION OF THE COURT

SULLIVAN, J.

This appeal involves the interpretation of an underinsured motorist indorsement contained in an automobile insurance policy issued by petitioner Colonial Penn Insurance Company to respondents Jack and Bertha Salti.

On August 11, 1979, the Saltis were passengers in a motor vehicle owned and operated by Max and Ellen Rayner, respectively, and insured under a Liberty Mutual Policy with liability limits of $100,000/$300,000. As their vehicle traveled south on Rumsey Road in Westchester County a second car, owned by Michael Petryszyn but operated at the time by Eugene Petryszyn, crossed over the center line from the opposite direction into the path of the Rayner vehicle, and precipitated a head-on collision which resulted in serious personal injuries to the Saltis. Mr. and Mrs. Salti, who were 79 and 69 years of age, respectively, at the time, sustained multiple fractures. Mrs. Salti was in traction for 15 weeks. Police officers responding to the accident arrested Eugene Petryszyn for driving while intoxicated. The Petryszyn vehicle was covered by an Allcity Insurance Company policy with $10,000/$20,000 limits.

The Saltis thereafter commenced a personal injury action against both the Rayners and Petryszyns in Supreme Court, Bronx County. On the eve of trial, they settled their claims for an aggregate of $145,000, towards which Allcity, in behalf of its insureds, the Petryszyns, contributed $20,000, the policy limit. Liberty Mutual paid $125,000 in behalf of the Rayners. In settling for $125,000, an amount well within Liberty Mutual's exposure of $300,000, the Saltis' trial attorney was of the "firm belief that there was no prima facie case available against the Rayner vehicle and that a trial involving that defendant would result in a defendant's verdict, with a judgment solely against the Petryszyn vehicle."

Having given proper notice and claiming a deficiency in the amount for which they settled, the Saltis thereafter sought to recover $15,000 each from their own insurer, Colonial, under a Florida-issued policy which provided $15,000/$30,000 coverage under an underinsured motorist indorsement. Colonial rejected the claim and the Saltis demanded arbitration.

Colonial moved to stay arbitration, asserting that it had no obligation to pay under the underinsured motorist indorsement because the Saltis, by settling within the Liberty Mutual policy limit of $300,000, had not exhausted "the limits of liability underall * * * policies applicable at

the time of the accident", as required by its policy. After initially staying arbitration, Special Term, on reargument, recalled its decision and denied the stay, from which determination Colonial has appealed. We agree with Special Term and affirm.

Paragraph C, upon which Colonial relies in disclaiming coverage, provides as follows: "The Company shall not be obligated to make any payment because of bodily injury to which this insurance applies and which arises out of the use of an underinsured highway vehicle until after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements."

Colonial's reliance is misplaced. This provision cannot be considered in isolation from other parts of the underinsured motorist indorsement, and must be read in conjunction with paragraph B, which defines an "underinsured highway vehicle" as: "a highway vehicle with respect to the use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance".

Thus, the indorsement affords coverage for bodily injury arising out of the use of an underinsured highway vehicle and the clause "the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident", contained in paragraph C should be read to relate, as it does in paragraph B, which defines an underinsured highway vehicle, to that vehicle only, and not, as Colonial contends, to the total number of vehicles involved in the accident. The clause is repeated with the qualifying words "until after" in paragraph C, which measures the insurer's liability, only because exhaustion of other insurance applicable to the underinsured vehicle is the event which triggers the obligation to pay. Whatever confusion is generated by the wording of paragraph C is the result of switching the clause's intended antecedent from the underinsured highway vehicle to *all* highway vehicles involved in the accident. Of course, any ambiguity in an insurance policy must be strictly construed against

the insurer, the draftsman of the policy. (*American Home Assur. Co. v Hartford Ins. Co.,* 74 AD2d 224; *Little v Blue Cross of Western N. Y.,* 72 AD2d 200.) A construction favoring the insurer will be sustained only "where it is the sole construction which can fairly be placed upon the words employed" (*Cantanucci v Reliance Ins. Co.,* 43 AD2d 622, 623) and the burden of proving such construction, as well as lack of coverage, is on the insurer (*Kronfeld v Fidelity & Cas. Co. of N. Y.,* 53 AD2d 190).

To interpret the insuring agreement so that the insurer's obligation to pay becomes operative only after *all* insurance applicable to *all* vehicles involved in the accident is exhausted, as Colonial contends, would emasculate the indorsement's intended effect, as construed by Florida courts, to provide coverage over and above the limits of the tort-feasor's insurance. (See *Williams v Hartford Acc. & Ind. Co.,* 382 So 2d 1216 [Fla]; *Aetna Cas. & Sur. Co. v Ilmoren,* 360 So 2d 1271 [Fla]; *State Farm Mut. Auto. Ins. Co. v Anderson,* 332 So 2d 623 [Fla].) If Colonial's interpretation were accepted, the indorsement would be inoperative except in the instances of a single-car accident involving an underinsured vehicle or the multiple-car accident where the aggregate applicable insurance is less than the limits of Colonial's policy. The indorsement would be inapplicable as long as any vehicle involved in the accident was covered with liability limits in excess of the Saltis' coverage. It would not matter that the party responsible for the operation of such vehicle might not be liable for the accident. Obviously, such a result was never intended, and this case illustrates the point.

The Rayners had applicable to this accident automobile liability insurance, the aggregate of which was 10 times the aggregate of the Saltis' coverage. Yet, notwithstanding the applicability of this relatively high-limit coverage, had the Saltis proceeded to trial against the Rayners, a distinct possibility existed that on the facts presented the Rayners might avoid liability altogether, in which event their insurer would not be obliged to pay any part of the damage award. Obviously, in that event, the Saltis, whose damages appear to be far in excess of the $10,000/$20,000 insurance provided by the Petryszyns' policy, would nonetheless be

confronted with an underinsured accident, since the Petryszyns' coverage is less than the $15,000/$30,000 limit of the Saltis' underinsured motorist indorsement.*

Nor is it legally significant that the Saltis settled their case against the Petryszyns and Rayners before trial. Apparently Colonial suggests that the $145,000 settlement is the full measure of damages and that the Saltis should be precluded from recovering an additional sum under the uninsured motorist indorsement. This argument fails under both Florida and New York law. In *United States Fid. & Guar. Co. v Gordon* (359 So 2d 480, 482 [Fla]), a case strikingly similar to the one at bar, the court stated: "The fact that [the insured] settled for an amount less than the full amount of liability insurance carried by [the underinsured motorist] is not determinative of the amount of damages actually sustained by [the insured]. See *Brooker v. Nationwide Mutual Insurance Co.,* 207 So. 2d 486 (Fla. 1st DCA 1968). *Settlements are often made for reasons which have little to do with the amount of damages sustained by the injured party.*" (Emphasis added.)

The courts of New York have expressed similar views on the significance to be ascribed to settlements: "Offers made in the course of settlement negotiations are not competent evidence as to the value of a claim. This is based on the public policy aimed at encouraging settlement and in recognition of the fact that concessions may be made to buy one's peace, without reflecting the true value of the claim." (*Cook v State of New York,* 105 Misc 2d 1040, 1045; cf. *Miller v State of New York,* 91 Misc 2d 1028.)

It is obvious from the injuries suffered by each of the Saltis that the $145,000 settlement did not represent the full measure of their damages. As the record discloses, the Saltis settled their action to avoid the rigors and inconvenience which a trial, at their advanced age, would have posed, and the distinct possibility that the outcome of such a trial would have been a judgment substantially uncollectible, against the underinsured Petryszyns, who were primarily, if not solely, responsible for the accident.

---

* Colonial readily concedes that under the circumstances of this accident the Petryszyn vehicle was underinsured within the meaning of the Saltis' policy.

Applying the only rational construction of paragraph C to the facts presented, we find that the Petryszyn vehicle was an underinsured highway vehicle as to which the limits of all liability insurance applicable to its use at the time of the accident have been exhausted. In so finding, however, we express no view as to whether the full limits of the Saltis' underinsured motorist coverage are available or whether these limits are reduced by the sums paid by Allcity in behalf of the underinsured Petryszyns. This issue is not before us and, in any event, is a matter for the arbitrator.

Accordingly, the order of Supreme Court, New York County (SHORTER, J.), entered December 19, 1980, which granted reargument, and upon reargument, recalled a prior determination granting a stay of arbitration and denied petitioner's motion to stay arbitration, should be affirmed with costs and disbursements.

KUPFERMAN, J.P., BIRNS, MARKEWICH and LUPIANO, JJ., concur.

Order, Supreme Court, New York County, entered on December 19, 1980, unanimously affirmed. Respondents shall recover of appellant $50 costs and disbursements of this appeal.