(April 29, 1986)

■ In the Matter of the Arbitration between HANOVER INSURANCE COMPANY, Appellant, and EDDY SAINT LOUIS, Respondent.—Order, Supreme Court, New York County (Shorter, J.), entered February 27, 1985, denying petitioner-appellant's application to stay arbitration, reversed, on the law, without costs or disbursements, and the application granted.

Respondent was injured when his car collided with one driven by Brown, whose insurer paid the policy limits of $10,000 on respondent's bodily injury claim. Alleging that his injuries exceed that amount, respondent, who has a $10,000 bodily injury limit policy with petitioner on his own car, has sought arbitration of his claim under his own policy's supplementary underinsured motorist indorsement.

Insurance Law § 3420 (f) (1) mandates insurance coverage for damages caused by an uninsured motor vehicle. The following paragraph, (f) (2), authorizes an optional plan whereby car owners may supplement their uninsured motorists coverage by insuring against damages caused by vehicles carrying insurance that is lesser in bodily injury limits than their own insurance. Respondent elected this option. In his policy it is called underinsured motorists coverage. In its applicability, it tracks the wording of paragraph (f) (2). Since Brown and respondent's policies have the same bodily injuries limits, Brown cannot be deemed either an underinsured motorist in respondent's policy or one who would trigger coverage under paragraph (f) (2). Hence there is no arbitrable claim. Concur—Murphy, P. J., Ross, Asch and Lynch, JJ.

Ellerin, J., dissents in a memorandum as follows: Respondent Eddy Saint Louis (St. Louis) is the insured under an automobile liability policy issued by petitioner-appellant Hanover Insurance Co. (Hanover), which provides for limits of liability of $10,000/20,000, the minimum coverage limits permitted under New York State law. (See, Vehicle and Traffic Law § 311 [4]; § 345 [a] [3].) In addition to liability coverage and standard "uninsured" motorist provisions, the policy also includes an "underinsured motorists insurance" indorsement which similarly provides coverage limits of $10,000/20,000. It is the "underinsured" indorsement that is here in issue.

That indorsement provides that it does not apply until after the limits under all other liability insurance policies applicable at the time of the accident "have been exhausted by payment of judgments or settlements", and it further states that any amount payable under the terms of the insurance "shall be reduced by * * * [a]ll sums paid on account of such bodily injury by or on behalf of * * * the owner or operator of the underinsured motor vehicle".

In March 1983, the insured, St. Louis, was injured when his vehicle was involved in a collision with another vehicle operated by one Winston Brown, who was covered under a policy issued by the Continental Insurance Co. which also provided for liability coverage limits of $10,000/20,000. St. Louis settled his claim against Brown for $10,000, the maximum payable under Brown's policy to a single person. Since St. Louis' damages exceeded this $10,000 payment, he demanded additional payment from his own insurer, Hanover, under the "underinsured" indorsement of his policy. Hanover refused payment on the ground that since the "underinsured" coverage of $10,000 (for a single person) is to be reduced by the amount received from other applicable insurance (in this case the $10,000 from Brown's carrier), no payment is due under the "underinsured" indorsement.

Upon Hanover's refusal of payment, St. Louis sought arbitration of his claim and Hanover moved for a permanent stay of arbitration, relying on the language in the indorsement providing for a setoff of the amount paid by the other vehicle. In my view, denial of the motion for a stay was proper.

It is conceded that respondent St. Louis paid a premium for an "underinsured motorists insurance" indorsement purporting to provide him with supplementary coverage of $10,000/20,000. However, if all of the terms of that indorsement are literally construed as written, then the insured has paid a premium for no coverage at all.

The indorsement in issue effectively renders nugatory any coverage thereunder in two ways—on the one hand, by virtue of the definitions of what does, or does not, constitute an "underinsured motor vehicle" and, on the other, by providing for a setoff of the amount received from the offending vehicle.

Turning first to the manner in which "underinsured vehicle" is defined, the indorsement states that " '[u]nderinsured motor vehicle' means a land motor vehicle * * * with respect to the ownership, maintenance or use of which the sum of the limits of liability under all * * * insurance policies applicable

at the time of the accident *is less than the applicable limits of liability under this insurance"* (emphasis added). Since the limits of "this insurance" are the same as the minimum permissible liability limits under New York State law, i.e., $10,000/20,000, no other vehicle registered in New York State could ever be an "underinsured motor vehicle" as defined in this indorsement. Nor would the insurance apply when vehicles from other States having lesser mandatory minimum coverages are involved, since the indorsement expressly excludes from the definition of "underinsured motor vehicle" any vehicle covered by insurance liability limits that are "less than the minimum limit for bodily injury liability specified by the financial responsibility law of the State of New York". Such vehicles have been held to fall within the separate and distinct "uninsured", as distinguished from "underinsured", provisions of the policy. *(See, Matter of Buglione [MVAIC],* 32 AD2d 525.) The only other alternative, that of a vehicle having no liability coverage at all, would likewise come within the "uninsured" provisions. Thus, under the definitions in the indorsement, there is no possible way that any other vehicle could ever be considered "underinsured" insofar as Mr. St. Louis is concerned. While the "underinsured" indorsement, for which a separate premium was paid, purports to provide the insured with supplementary coverage of $10,000/20,000 after the other "insurance policies applicable at the time of the accident have been exhausted", these definitional provisions effectively emasculate the intent of that indorsement and render it completely without vitality.

The purported coverage is further undermined by the proviso in paragraph 3 (b) (1) of the indorsement which states that "[a]ny amount payable under the terms of this insurance * * * shall be reduced by * * * [a]ll sums paid on account of such bodily injury by or on behalf of * * * the owner or operator of the underinsured motor vehicle". The import of such "reduction" provision is discussed in *Garry v Worldwide Underwriters Ins. Co.* (120 Misc 2d 91, *affd without opn* 101 AD2d 717 [4th Dept]). As was aptly noted by the court in *Garry,* the reduction clause, in effect, takes away the coverage which is stated on the face of the policy and, whatever the face amount of the underinsured coverage, the company would never pay out that face amount since, at the least, it would be reduced by $10,000, the minimum liability limit specified by the law of New York. As was pointed out there, and is true here as well, no notice of this deductible aspect appears on the face of the policy.

At best, the provisions of the indorsement here in issue can be termed ambiguous and internally inconsistent. They can also be said to be misleading since the coverage allegedly provided on the face of the policy is in its entirety taken away by the exclusions and definitions. It is hornbook law that the terms of the insurance contract as a whole shall be examined in determining the intent of the parties; and consistent with the rule that policies of insurance, drawn as they ordinarily are by the insurer, are to be liberally construed in favor of the insured, is the corollary that where the meaning of a policy of insurance is in doubt, all ambiguity must be resolved against the company which drafted the policy. *(See, Miller v Continental Ins. Co.,* 40 NY2d 675; *American Home Assur. Co. v Hartford Ins. Co.,* 74 AD2d 224; *Little v Blue Cross,* 72 AD2d 200.)*

In this case, in order to clarify the policy and render it internally consistent, the reduction clause must be excluded from the policy, or the dollar amounts, in the future, must be changed to reflect the reality of the insurance company's intention. In addition, the definition of "underinsured" must be construed as including a vehicle having liability limits equal to that of the coverage provided by the indorsement— i.e., $10,000/20,000. *(See, Garry v Worldwide Underwriters Ins. Co.,* 120 Misc 2d, at p 93; *cf. Matter of Colonial Penn Ins. Co. v Salti,* 84 AD2d 350.) By so doing, the indorsement will in fact provide the "underinsured" coverage which on its face it purports to provide, and for which the insured contracted and paid, and will permit the insured, St. Louis, to recover to the extent his injuries exceed the $10,000 paid by the offending vehicle, up to a further maximum of the $10,000 limit of underinsurance.