OPINION OF THE COURT
Joseph D. Mintz, J.
Plaintiffs move for summary judgment on their declaratory judgment action, and defendant cross-moves for summary judgment dismissing the complaint.
The declaratory judgment action is limited to the application of the underinsured motorists provisions in the supplementary uninsured motorist rider to a policy of insurance issued by defendants which covered plaintiffs herein. The *331 following facts are undisputed: Plaintiffs’ automobile was covered by a policy of insurance issued by defendant providing for liability coverage in the amount of $100,000/300,000. Plaintiffs also purchased a supplementary uninsured motorist rider which provided for $50,000/100,000 coverage for injuries caused by an underinsured motorist, which rider is provided for in Insurance Law § 3420 (f) (2). Plaintiff, Salvatore Gullo, was injured due to the negligence of Robert A. Bowman, who had liability insurance in the amount of $50,000/100,000. Bowman’s insured offered the entire policy amount to Salvatore Gullo in settlement of his claim against Bowman. Plaintiff accepted the full policy amount, and signed a general release, although his injuries exceeded the policy amount.
Plaintiff claims that since his injuries result in damages in excess of $100,000, and that he received only $50,000 from Bowman’s policy, he is entitled to the full amount under his underinsured coverage. Defendant does not contest that plaintiff’s damages exceed $100,000, but argues that the underinsured motorist coverage does not apply because: (1) plaintiff signed a general release thus abrogating defendant’s subrogation rights; and (2) Bowman was not an underinsured motorist within the meaning of the policy. This court has already ruled on defendant’s first contention, and found it without merit for reasons stated at oral argument. This decision will address solely the meaning of underinsured motorist under the policy.
In order to examine the issue at hand, it is necessary to recapitulate the history of underinsured motorist benefits. Such benefits are authorized under and governed by Insurance Law § 3420 (f) (2), though denoted therein as supplementary uninsured motorist insurance. Section 3420 (f) (2) provides: "Any such policy shall, at the option of the insured, also provide supplementary uninsured motorists insurance for bodily injury, in an amount up to the bodily injury liability insurance limits of coverage provided under such policy, subject to a maximum of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to such limit for one person, up to three hundred thousand dollars because of bodily injury or death of two or more persons in any one accident. Supplementary uninsured motorists insurance shall provide coverage, in any state or Canadian province, if the limits of liability under all bodily injury liability bonds and insurance policies of another motor vehicle liable for damages are in a lesser amount than the bodily injury liability insurance limits of coverage provided by *332 such policy. As a condition precedent to the obligation of the insurer to pay under the supplementary uninsured motorists insurance coverage, the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident shall be exhausted by payment of judgments or settlements.” (Emphasis added.) Questions under underinsured motorists insurance first arose regarding standard language in such riders providing for setoff against the underinsured limits of amounts received from liability bonds or insurance policies of third parties. (See, Garry v Worldwide Underwriters Ins. Co., 120 Misc 2d 91 [Spec Term, Erie County 1983], affd without opn 101 AD2d 717 [4th Dept 1984].) Such setoff was held to be improper under the language of section 3420 (f) (2). (Garry v Worldwide Underwriters Ins. Co., supra; Matter of United Community Ins. Co. v Mucatel, 69 NY2d 777 [1987], affg without opn 119 AD2d 1017, affg without opn 127 Misc 2d 1045.)
Insurers, their set-off clauses stymied by Mucatel (supra), then began limiting their underinsured motorists coverage by use of definitional provisions like the provision at issue here: " 'Underinsured motor vehicle’ ” means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.” The language of this provision clearly states that underinsured motorist insurance is not available when the tort-feasor’s liability insurance is equal to or greater than the amount of underinsured motorist coverage. Applying the facts to this case, the language of the policy prevents the application of the underinsured motorist coverage, as that coverage limit is $50,000/100,000, the same as the liability limits of Bowman’s insurance.
The clear language of the policy will control, unless this language is contrary to the direction of section 3420 (f) (2), as stated above, which dictates underinsured motorist coverage. The Insurance Law, then, is the ultimate authority for whether or not coverage is afforded, and, as stated by the Court of Appeals in Maurizzio v Lumbermens Mut. Cas. Co. (73 NY2d 951, 954 [1989]), the issue becomes "whether the coverage is contracted for at all under the Insurance Law.”
The critical language of Insurance Law § 3420 (f) (2) is as follows: "Supplementary uninsured motorists shall provide coverage, in any state or Canadian province, if the limits of liability under all bodily injury liability bonds and insurance *333 policies of another motor vehicle liable for damages are in a lesser amount than the bodily injury liability insurance limits of coverage provided by such policy.” (Emphasis added.) The plain meaning of this language is that if supplementary uninsured coverage is purchased, it applies whenever the tortfeasor is "underinsured,” which underinsurance is defined as having less coverage than the "bodily injury liability insurance limits of coverage” of the insured. Thus, under the plain reading of section 3420 (i) (2), in determining whether the purchased coverage applies, the tort-feasor’s limits are to be compared to the liability limits of the insured, and are not to be compared to the underinsurance coverage of the insured.
This is the reading of section 3420 (f) (2) most often given, even in face of a different definition found in the supplementary uninsured rider. (See, e.g., Gull v General Acc. Fire & Life Assur. Corp., 121 Misc 2d 721, 725 [Spec Term, Rensselaer County 1983]; Hanover Ins. Co. [Saint Louis], 119 AD2d 529 [1st Dept 1986].)
Only the language of the policy requires comparing the tortfeasor’s liability coverage to the insured’s supplemental uninsured coverage. In the most recent interpretation of section 3420 (f) (2), the Court of Appeals in Maurizzio, (supra, at 953) held that the endorsement is "definitionally not available where * * * the policy limits of the insured’s vehicle do not exceed the policy limits of the other vehicle or vehicles involved in the injury-causing accident.” In Maurizzio, there was held to be no underinsurance coverage, based on the finding that the insured’s policy limits did not exceed the policy limits of the other vehicle. Nowhere in that decision did the court compare the other vehicle’s policy limits to the insured’s underinsurance coverage.
This reading of section 3420 (f) (2) is also necessary in order to comply with the intention of the Legislature in its enactment. This provision was enacted by Laws of 1977 (ch 892). The memorandum of the State Executive Department accompanying this legislation explains the new provision as follows: "This new coverage would be excess to the liability coverage of the other automobile in the accident. Thus, by purchasing this option, the insured would obtain the same level of protection for himself and his passengers which he purchased to protect himself against liability to others and would not be limited to the coverage of the other automobile.” (1977 McKinney’s Session Laws of NY, at 2446.) Again, the intention is to allow the coverage to an insured so that his total coverage, in *334 case of an accident, would equal his own liability limits. The way to achieve this is to compare the liability limits of the tort-feasor’s insurance with the liability limits of the insured. If the insured’s limits are greater than the limits of the tortfeasor, he should be entitled to the coverage to the extent so that the total he recovers is the amount of his own liability coverage.
In the case at hand, when the insured’s policy limits, $100,000/300,000, are compared to the policy limits of the tort-feasor, $50,000/100,000, the tort-feasor is definitionally an underinsured motorist, under the Insurance Law and the coverage applies.
To apply the strict policy language, instead of the language, when coupled with the illegality of any setoff, would create the following anomalous situation. In the case at hand, had the tort-feasor had $10,000 in coverage, the plaintiff would be entitled to $50,000 in underinsurance benefits; had the tortfeasor had $25,000 in coverage, the plaintiff would be entitled to $50,000 in underinsurance benefits; and, if the tort-feasor had $49,999 in coverage, the plaintiff would be entitled to $50,000 in underinsurance benefits. Yet, since the tort-feasor had $50,000 in coverage, the defendants would provide that no underinsurance benefits would be paid. The language of the legislative history cited above makes clear that underinsurance coverage was not to be simply a function of the coverage of the other tort-feasor, but rather a function of the coverage of the other tort-feasor as it compares with the liability coverage of the insured.
The Fourth Department had apparently given a different reading to section 3420 (f) (2) of the Insurance Law in Manfredo v Centennial Ins. Co. (124 AD2d 979 [1986]). While this court is bound by the decisions of the Fourth Department, this court is also bound by the decisions of the Court of Appeals. The Court of Appeals decision in Maurizzio (supra), decided after Manfredo, particularly when coupled with the legislative history, mandates a different conclusion than that reached in Manfredo. For this reason, this court is to be bound by the Court of Appeals reading of section 3420 (f) (2), and concludes that the Insurance Law mandates coverage to the extent of the insured’s liability coverage, not to the extent of the insured’s underinsurance coverage as the policy provides.
This court is aware that in light of the illegality of the setoff as decided by the Court of Appeals in Mucatel (supra), the *335 insurer may, in certain cases, be obliged to pay underinsurance coverage, which together with the amount received by the insured, is in excess of the total liability coverage of the insured. However, this should be corrected by legislative change respecting the setoff and the amount of coverage the insurer should offer, with due consideration to the original intention to allow total recovery by the insured equal to his own liability limits.
For the foregoing reasons, the plaintiffs’ motion for summary judgment is granted, and the defendant’s motion for summary judgment is denied.