In re Jennifer RADIL, Cross–
Claim Plaintiff

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURG, PA.,
Cross–Claim Defendant.

No. 10SA34.

Supreme Court of Colorado,
En Banc.

June 28, 2010.

Roberts Levin Rosenberg, P.C., Thomas L. Roberts, Bradley A. Levin, Michael J. Rosenberg, Denver, Colorado, Attorneys for Cross–Claim Plaintiff.

Hall & Evans, L.L.C., Alan Epstein, Kenneth H. Lyman, Peter C. Middleton, Devi C. Yorty, Denver, Colorado, Attorneys for Cross–Claim Defendant.

Justice HOBBS delivered the Opinion of the Court.

We exercise our original jurisdiction under C.A.R. 21 to review a trial court order (1) compelling arbitration of an injured employee's claim for underinsured motorist benefits from her employer's excess liability insurer and (2) directing that the arbitration panel determine the excess liability insurer's defense of litigation-based waiver.

First, we consider whether an excess insurer's follow-form endorsement of the primary insurer's uninsured/underinsured motorist ("UM/UIM") coverage subjects the excess insurer in this case to an arbitration clause contained in the primary insurer's coverage. Injured employee Jennifer Radil contends that she and excess insurer National Union Fire Insurance Company ("National Union") are parties to a valid arbitration agreement via National Union's follow-form endorsement of primary insurer Great American Assurance Company's ("Great American") UM/UIM coverage. National Union counters that its UM/UIM follow-form endorsement does not incorporate the Great American arbitration clause and, instead, expressly disclaims it. We agree with Radil and affirm the trial court on this issue, thereby discharging our rule in part.

Second, we review the trial court's order that the arbitration panel determine the merits of a defense of litigation-based waiver. The trial court made this determination in response to National Union's contention that, even if it is bound by the arbitration clause, Radil waived her right to arbitrate by litigating prior to her motion to compel arbitration. We determine that the trial court erred in consigning the litigation-based waiver issue to arbitration; instead, it must decide the merits of National Union's defense. Thus, we reverse the trial court on this issue, making our rule absolute in part.

We hold that, absent express language defining the coverage endorsed or a disclaimer of particular terms or conditions, the excess insurer's follow-form endorsement at issue in this case tracks the underlying coverage in every respect, thereby incorporating the terms and conditions that define the underlying coverage. Great American's underlying UM/UIM coverage, as defined through its UM/UIM endorsement, includes an arbitration clause, among other terms and conditions. National Union's follow-form endorsement of that coverage does not provide any definition of the coverage it endorses, nor

any express disclaimer of particular terms or conditions. Accordingly, as a matter of contract interpretation, the parties intended National Union's UM/UIM coverage be defined by the terms and conditions that define Great American's UM/UIM coverage, including the arbitration clause.

We further hold that, absent the parties' clear intent to the contrary, litigation-based waiver is an issue the trial court, not an arbitrator, properly determines. In this case, the parties expressed no intent that a defense of litigation-based waiver be subject to arbitration; instead, the issue of litigation-based waiver falls outside the limited scope of the arbitration agreement, and the trial court properly determines it.

Accordingly, we affirm the trial court's order compelling arbitration, reverse its order ruling that the arbitration panel determine the defense of litigation-based waiver, and remand the case for further proceedings consistent with this opinion.

## I.

This case arises out of a July 10, 2000 car accident, in which Radil was seriously injured and rendered a quadriplegic. At the time of the accident, Radil worked as a camp counselor for Sanborn Western Camps ("the employer"). The employer had scheduled a counselor appreciation day, which included a whitewater raft trip partially paid for by the employer. The employer's vans were not available that day, so a supervisor provided her sport utility vehicle to transport the counselors. The supervisor's daughter, also a counselor, drove the vehicle. Due to the number of passengers, Radil rode in the space behind the seats; the space lacked passenger restraints. En route, the driver lost control and the vehicle rolled, ejecting Radil and breaking her neck.

The driver was insured under her mother's automobile liability policy with a $500,000 limit. The employer was insured under a Great American commercial automobile and general liability policy with a $1 million limit and under a commercial umbrella policy issued by National Union with a $25 million limit. The Great American policy provides

UM/UIM coverage via a "Colorado Uninsured Motorists Coverage—Bodily Injury" endorsement. The endorsement contains numerous terms and conditions defining the policy's UM/UIM coverage and includes the following arbitration clause:

If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured," then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party ma[y] make a written demand for arbitration....

National Union's umbrella policy contains an "Uninsured Motorist and Underinsured Motorist Follow–Form Endorsement" of Great American's UM/UIM coverage:

This insurance shall not apply to:

. . . .

Any obligation of the Insured under an "Uninsured Motorist" or "Underinsured Motorist" law. However, if a policy listed in the Schedule of Underlying Insurance provides this coverage:

1. this exclusion will not apply; and

2. the insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remains [sic] unchanged.

The phrase, "[a]ll other terms and conditions of this policy remain[ ] unchanged," appears at the end of each of the National Union policy's numerous endorsements, many of which are follow-form in nature.

After being denied workers' compensation benefits, Radil filed a personal injury diversity action in federal court against the employer and the driver. In the meantime, Great American filed this declaratory judgment action against the employer and Radil in state court to establish that it had no duty to defend or indemnify the employer in the federal suit. The employer joined National Union as a cross-claim defendant, and Radil subsequently cross-claimed for a declaration

that she is entitled to UIM benefits under the National Union policy.

With National Union's consent,[1] the parties settled in federal court. Specifically, Radil settled her claims against the driver for the $500,000 automobile liability policy limit and her claims against the employer for the $1 million Great American policy limit, but reserved her right to seek UIM benefits from National Union. Great American and the employer subsequently stipulated to dismissal of their claims in the state court action, leaving only Radil and National Union as parties.

Radil moved to compel arbitration or, in the alternative, to amend her cross-claim to include a claim for UIM benefits. National Union then moved for summary judgment, asking the trial court to find that it has no obligation to pay Radil any UM/UIM benefits. In response, Radil filed a cross motion for summary judgment. The trial court granted National Union's motion for summary judgment and simultaneously denied as moot Radil's motion to compel arbitration or, in the alternative, to amend her cross-claim.

On direct appeal, the court of appeals vacated the grant of summary judgment and concluded that Radil is entitled to UIM benefits under the National Union policy. *Radil v. Nat'l Union Fire Ins. Co.*, 207 P.3d 849, 859 (Colo.App.2008), *cert. denied*, No. 08SC983, 2009 WL 1383815 (Colo. May 18, 2009).

On remand, Radil again moved to compel arbitration or, in the alternative, to amend her cross-claim. National Union responded that its UM/UIM follow-form endorsement does not incorporate the Great American arbitration clause and that, even assuming it does, Radil waived her right to compel arbitration by participating in litigation.[2] The trial court granted Radil's motion to compel arbitration on November 9, 2009, finding that a valid arbitration agreement exists between the parties and that the arbitration panel must determine the defense of litigation-based waiver. National Union petitioned this court to issue a rule to show cause why the trial court should not vacate its order, and we granted the petition.

## II.

We hold that, absent express language defining the coverage endorsed or a disclaimer of particular terms or conditions, the excess insurer's follow-form endorsement at issue in this case tracks the underlying coverage in every respect, thereby incorporating the terms and conditions that define the underlying coverage. Great American's underlying UM/UIM coverage, as defined through its UM/UIM endorsement, includes an arbitration clause, among other terms and conditions. National Union's follow-form endorsement of that coverage does not provide any definition of the coverage it endorses, nor any express disclaimer of particular terms or conditions. Accordingly, as a matter of contract interpretation, the parties intended National Union's UM/UIM coverage be defined by the terms and conditions that define Great American's UM/UIM coverage, including the arbitration clause.

We further hold that, absent the parties' clear intent to the contrary, litigation-based waiver is an issue the trial court, not an arbitrator, properly determines. In this case, the parties expressed no intent that a defense of litigation-based waiver be subject to arbitration; instead, the issue of litigation-based waiver falls outside the limited scope of the arbitration agreement, and the trial court properly determines it.

### A. Standard of Review

■ Because a trial court order compelling arbitration is not immediately appealable, we may exercise our original jurisdic-

---

1. In providing its consent, National Union did not waive its position that Radil is not entitled to UIM benefits under its policy.

2. National Union contends that, since the inception of the state court action in 2001, Radil has filed litigation documents, including responses to the employer's motion to dismiss and to Great American's motion for summary judgment, without first requesting arbitration of her claim for UIM benefits. The trial court has not yet decided the merits of this defense. Thus, this issue is not before us in this original proceeding, and, consistent with this opinion, the trial court must determine the issue on remand.

tion to review such an order. *See, e.g., Ingold v. AIMCO/Bluffs, L.L.C. Apartments,* 159 P.3d 116, 119 (Colo.2007); *Lane v. Urgitus,* 145 P.3d 672, 679 (Colo.2006). In this case, direct appeal of the trial court's order following the conclusion of the arbitration proceedings would be highly inefficient, particularly because we determine that the trial court erred in directing the arbitration panel to decide the defense of litigation-based waiver.

▮ The existence and scope of an arbitration agreement are questions of law that we review de novo, applying state law principles governing contract interpretation. *Lane,* 145 P.3d at 677. We look to the plain and ordinary meaning of the terms of the agreement and construe it to effectuate the parties' intent and the purposes of the agreement. *Id.* We resolve ambiguities in favor of arbitration, which is a favored method of dispute resolution in Colorado. *Id.* at 678; *see also* Colo. Const. art. XVIII, § 3; §§ 13–22–201 to –230, C.R.S. (2009); *Peterman v. State Farm Mut. Auto. Ins. Co.,* 961 P.2d 487, 493 (Colo.1998).

▮▮ Likewise, we review the interpretation of an insurance policy de novo, employing contract interpretation principles. *Allstate Ins. Co. v. Huizar,* 52 P.3d 816, 819 (Colo.2002). We construe the plain language of the contract to effectuate the intent of the parties, and we resolve ambiguities in favor of the insured. *State Farm Mut. Auto. Ins. Co. v. Nissen,* 851 P.2d 165, 166–67 (Colo. 1993).

### B. The Follow–Form Endorsement Incorporates the Primary Policy's Arbitration Clause in this Case

▮ Whether a follow-form endorsement incorporates the terms and conditions, such as an arbitration clause, of the underlying policy is an issue of first impression in the Colorado courts.

In this case, Great American's UM/UIM endorsement includes specific terms and conditions that define its UM/UIM coverage. These terms and conditions constitute the "form" of Great American's UM/UIM coverage and what the parties intended the cover-

age to include. Great American's UM/UIM coverage includes the arbitration clause, which gives the parties the right to compel arbitration of disagreements over entitlement to or amount of UM/UIM benefits.

National Union's follow-form endorsement of Great American's UM/UIM coverage does not provide any language defining the coverage it endorses. Absent such limiting language, the follow-form endorsement incorporates the form of Great American's UM/UIM coverage. Otherwise, National Union's UM/UIM coverage would stand undefined, leaving the parties guessing as to what the coverage does or does not provide. The follow-form endorsement requires that National Union assume "[a]ny obligation of the Insured under an 'Uninsured Motorist' or 'Underinsured Motorist' law ... [where] a policy listed in the Schedule of Underlying Insurance provides this coverage." The substance of this obligation is defined by the terms and conditions of Great American's UM/UIM coverage, and the parties agreed to those terms and conditions via the follow-form endorsement.

National Union could have explicitly rejected or modified the arbitration clause when it issued its follow-form endorsement; it cannot now attempt to avoid a term of the underlying coverage when its endorsement follows the form of that coverage. Accordingly, we determine that National Union's follow-form endorsement subjects it to the arbitration clause contained in Great American's UM/UIM coverage. Consequently, National Union is a party to a valid arbitration agreement.

Our holding is supported by Colorado's public policy favoring arbitration as a mechanism of alternative dispute resolution. *See Lane,* 145 P.3d at 678. Authorities from other jurisdictions also support our construction that a follow-form endorsement generally incorporates the terms and conditions of the underlying policy, absent an express limitation to the contrary. *E.g., Lexington Ins. Co. v. W. Pa. Hosp.,* 423 F.3d 318, 322 (3d Cir.2005) (follow-form policy "incorporated the terms and conditions of the primary [ ] policy"); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.,* 256 F.3d 587, 589 (7th Cir.2001)

(follow-form policy "logically includes an arbitration agreement in the underlying contract"); *Boeing Co. v. Agric. Ins. Co.*, No. C05–921C, 2005 WL 2276770, at *7 (W.D.Wash. Sept.19, 2005) (Excess insurers "constructed their policies to 'follow form' on [primary insurer's] policy, so that each knew of and expressly incorporated the arbitration provision in [primary insurer's] policy .... The excess carriers will not be heard to complain of the effect (or lack thereof) of arbitration clauses they had every opportunity to modify or reject in their own policies with [insured]."); *Safety Nat'l Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1009 n. 14 (Ind.App.2005) ("It is well established in insurance law that a follow form excess policy incorporates by reference the terms of the underlying policy and is designed to match the coverage provided by the underlying policy." (internal quotations and citation omitted)); *see also Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 203 (3d Cir.2004) ("[T]he coverage issues presented turn solely on the interpretation of the underlying policy." (internal quotations and citation omitted)); *Rausch v. Beech Aircraft Corp.*, 277 N.W.2d 645, 646 (Minn.1979) ("A 'follow form endorsement' is designed to 'track' or provide the same coverage as a separate underlying policy."); *Black's Law Dictionary* 821 (8th ed. 2004) (defining "follow-form policy" as one that "adopts the terms and conditions of another insurance policy"); 17 Eric Mills Holmes, *Holmes' Appleman on Insurance*, § 120.1, at 337 (2d ed. 2001) (" 'Follow Form' excess liability insurance policies generally provide coverage under the same terms as the primary policy for liability ....."). As the court in *Sphere Drake* reasoned, "[a] follow-form policy must have a form, which is to say that form's terms, to follow...." 256 F.3d at 589.

We find unavailing National Union's argument that the statement "all other terms and conditions of this policy remain[ ] unchanged" functions as an express disclaimer of the arbitration clause. This ambiguous, boilerplate statement appears at the end of each of the National Union policy's numerous endorsements, irrespective of the content of the endorsement. It does not function as an express disclaimer of particular terms or conditions, such as the arbitration clause. To the contrary, it is a nebulous statement incapable of interpretation by reference to any provision of either insurance policy.

Because the statement National Union relies upon is ambiguous, we must construe it in favor of arbitration, *Lane*, 145 P.3d at 678, and in favor of the insured, *Nissen*, 851 P.2d at 166–67. Accordingly, we find that a reasonable reading of the statement—one that comports with our long-standing rules of construction—is that it refers to terms and conditions of National Union's excess liability policy that are unrelated to the follow-form endorsement of Great American's UM/UIM coverage. Because the statement does not function as a disclaimer of or limitation on any of the terms or conditions defining Great American's UM/UIM coverage, National Union's follow-form endorsement binds it to the arbitration clause contained in the Great American policy.

## C. The Trial Court Must Determine the Defense of Litigation–Based Waiver

■ National Union asserts that, even if it is party to a valid arbitration agreement, the trial court erred in finding that National Union's defense of litigation-based waiver is properly determined by the arbitration panel. We agree with National Union on this issue.

■ An arbitrator lacks jurisdiction to address an issue outside the scope of the arbitration agreement. *City & County of Denver v. Dist. Ct.*, 939 P.2d 1353, 1363–64 (Colo.1997). Absent clear intent to the contrary expressed in the arbitration agreement, we presume that trial courts, not arbitrators, determine issues of scope; "otherwise, unwilling parties might be forced to arbitrate a matter they reasonably thought a judge, not an arbitrator, would decide." *Id.* at 1363 (internal quotations and citation omitted). In determining whether a particular dispute falls within the scope of an arbitration agreement, we apply a presumption favoring arbitration unless we can say with "positive assurance that the arbitration provision is not susceptible of any interpretation that encompasses the subject matter of the dispute."

*Id.* at 1363–64 (internal quotations and citations omitted).

The arbitration clause in Great American's UM/UIM endorsement is expressly of limited scope. By its plain terms, it applies only to disputes over entitlement to or recoverable amount of UM/UIM damages:

> If we and an "insured" disagree whether the "insured" is *legally entitled to recover damages* from the owner or driver of an "uninsured motor vehicle" or do not agree as to *the amount of damages* that are recoverable by that "insured," then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

(Emphasis added.)

A defense of litigation-based waiver is outside the limited scope of the clause because litigation-based waiver is a procedural defense unrelated to the insured's entitlement to or amount of UM/UIM damages. Because the court of appeals already determined that Radil is entitled to UIM benefits under National Union's policy, *Radil*, 207 P.3d at 859, the only issue left to be arbitrated is the amount of UIM damages she is to receive. Therefore, we can say with "positive assurance that the arbitration provision is not susceptible of any interpretation that encompasses" a defense of litigation-based waiver. *See City & County of Denver*, 939 P.2d at 1363–64. Accordingly, the arbitration panel lacks jurisdiction to determine the issue, and the trial court erred in so deciding. *See id.*

Our conclusion accords with the presumption that, absent clear intent to the contrary expressed in the arbitration agreement, the trial court determines issues of the scope of the arbitration clause. *See id.* at 1363. The Great American arbitration clause expresses no clear intent that disagreements over its scope be determined by an arbitrator.

Our determination also comports with the decisions of other jurisdictions, which uniformly have found that litigation-based waiver is properly determined by the trial court, and with the sound policy rationales supporting those decisions.[3] *E.g., JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393–94 (6th Cir.2008); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217–19 (3d Cir. 2007); *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 13–14 (1st Cir.2005); *Price v. Random House, Inc.*, No. 07cv01347–RPM–MJW, 2009 WL 3415821, at *6 (D.Colo. Oct.16, 2009); *Perry Homes v. Cull*, 258 S.W.3d 580, 587–88 (Tex.2008). We find these decisions consistent with Colorado law, *see City & County of Denver*, 939 P.2d at 1363–64, and adopt the policy rationales expressed therein.

First, trial courts are better-suited than arbitrators to decide claims of litigation-based waiver, given that such waiver depends upon the parties' conduct before that court and implicates trial court procedures with which arbitrators may have less familiarity. *Ehleiter*, 482 F.3d at 218; *Marie*, 402 F.3d at 13. In other words, trial courts are "better positioned to determine whether the belated request for arbitration is a thinly veiled attempt to forum shop," *Ehleiter*, 482 F.3d at 218, and are "mo[re] adept at policing procedure-abusing conduct," *JPD*, 539 F.3d at 394. Second, sending waiver claims to an arbitrator is inefficient, given that a determination

3. The U.S. Supreme Court has articulated a presumption that procedural defenses to compelled arbitration are properly determined by an arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (decided in the context of waiver via limitations period). Although this presumption could be construed to apply to claims of litigation-based waiver, federal and state courts addressing the arbitrability of litigation-based waiver both before and after *Howsam* uniformly have found that a defense of litigation-based waiver is properly determined by the trial court. See citations in text. For example, the Third Circuit Court of Appeals reasoned that

the Supreme Court did not intend its pronouncements in *Howsam* ... to upset the "traditional rule" that courts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court.... Properly considered within the context of the entire opinion, ... we believe it becomes clear that the Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration, such as the [ ] time limit rule at issue in this case, and not to claims of waiver based on active litigation in court.

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217–19 (3d Cir.2007).

by the arbitrator that a party waived its right to arbitrate sends the proceedings back to the trial court without having made any progress with respect to the merits of the dispute. *Marie*, 402 F.3d at 13. Finally, the procedural question of litigation-based waiver is unrelated to the merits of the dispute, which the parties intended to be decided by an arbitrator. *JPD*, 539 F.3d at 394; *Marie*, 402 F.3d at 13.

 Adopting these policy rationales, we presume that the trial court, not an arbitrator, properly decides a claim of litigation-based waiver. If the parties intend otherwise, they may exercise their right to contract freely, *see City & County of Denver*, 939 P.2d at 1361, and expressly include determinations of procedural defenses, such as litigation-based waiver, within the scope of their arbitration agreement. Absent such clear intent, we conclude that a trial court is better-suited to decide whether a party's conduct before it constitutes waiver of that party's right to compel arbitration.

In this case, because the parties expressed no intent that the issue be determined by an arbitrator, we hold that the trial court must determine National Union's defense of litigation-based waiver.

### III.

Accordingly, we affirm the trial court's order compelling arbitration and reverse its order ruling that the arbitration panel determine the defense of litigation-based waiver. Thus, we discharge our rule in part and make it absolute in part. We remand the case for further proceedings consistent with this opinion.

Justice EID concurs in part and dissents in part, and Justice COATS joins in the concurrence and dissent.

Justice EID, concurring in part and dissenting in part.

I disagree with the majority's view that a follow-form endorsement subjects an excess insurer to all terms and conditions of the primary insurance policy, including an arbitration clause, except those that the excess insurer expressly disclaims. Even if the majority's position were correct, however, the excess insurer in this case did in fact expressly disclaim the terms and conditions of the underlying primary policy in favor of its own terms and conditions, which did not include an arbitration clause. For these reasons, I respectfully dissent in part.[1]

The majority holds that "absent express language defining the coverage endorsed or a disclaimer of particular terms or conditions, the excess insurer's follow-form endorsement at issue in this case tracks the underlying coverage in every respect." Maj. op. at 689. In other words, the majority in effect takes the position that merely by using the title "follow-form," an insurer is bound to all of the provisions of the underlying policy, including an arbitration clause, and must expressly exclude terms to which it is not bound. But under Colorado law, an excess insurer, like all parties to a contract, is bound only to the terms to which it agrees. *See, e.g., Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501 (Colo.2004) ("In interpreting a contract, we seek to give effect to the intent and reasonable expectations of the parties." (citation omitted)). In this case, I see no evidence in the language it used that National Union agreed to bind itself to the arbitration clause in the Great American policy.

The language of National Union's endorsement states that the UM/UIM insurance its policy provides "will not be broader than the insurance coverage provided by [Great American's] policy." I would read that language to mean exactly—and only—what it says: National Union's insurance will not be broader than the insurance coverage provided by Great American. National Union's endorsement further states that "[a]ll other terms and conditions of this policy remain[ ] unchanged." The National Union policy thus provides that while the UM/UIM "coverage" is the same as (or at least no broader than)

---

1. I agree with the majority that a court, rather than an arbitrator, should determine whether a litigation-based waiver of arbitration has occurred. However, because I would hold that Great American's arbitration clause did not bind National Union to mandatory arbitration, I would not reach the merits of the waiver issue.

that contained in the Great American policy, all other "terms and conditions" of the policy "remain[ ] unchanged." Because the Great American policy's arbitration clause does not go to the policy's "coverage," it was not incorporated into the National Union agreement. Instead, the National Union policy (which did not include an arbitration clause) "remain[ed] unchanged." In sum, the "follow-form" endorsement does not change any aspects of National Union's policy other than the ones it incorporates—that is, the specified UM/UIM insurance coverage.

Contrary to the majority's position, maj. op. at 689–90, a follow-form policy does not incorporate all of the provisions of the policy to which it relates except those it expressly disclaims. "The typical [follow-form] excess insurance policy will use, or refer to, the same policy language as that in the underlying ... policy." 17 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d* § 120.1 (2001). Follow-form policies also "generally provide coverage under the same terms as the primary policy for liability." *Id.* However, it does not follow that a follow-form endorsement must bind an insurer to all terms and conditions of the underlying policy except for the ones it expressly enumerates as exclusions. As with any other contract, parties contracting for excess insurance are free to rely on their own terms and conditions. *See, e.g., id.* ("[E]xcess policies may contain their own self-contained policy language .... [T]here is no standard coverage form."). I would not read the "follow-form" title alone to create obligations to which National Union did not agree. *See, e.g., Scottsdale Ins. Co. v. Safeco Ins. Co. of Am.*, 111 F.Supp.2d 1273, 1278 (M.D.Ala.2000) ("[P]roperly characterizing an insurance policy ... turns on the policy's terms, not its title ...." (citation omitted)).

The majority cites a number of cases from other jurisdictions for its position that by using a follow-form endorsement, parties generally incorporate the underlying policy in its entirety, absent an express disclaimer. *See* maj. op. at 692–93. Yet those cases simply do not stand for such a broad proposition. For example, in *Lexington Insurance Co. v. Western Pennsylvania Hospital*, 423 F.3d 318, 322 (3d Cir.2005), *see* maj. op. at 692–93, the follow-form endorsement at issue stated, "All of the terms and conditions of said underlying insurance shall apply to this insuring agreement except as otherwise expressly stated herein." Certainly, the particular language of the policy at issue in the case—notably, language that is not present here—adopted the position that the majority takes in this case. However, the court made no suggestion that the position adopted by the particular language at issue in that case would apply to other cases, such as this one, in which the language is not used.

Similarly, the majority cites *Sphere Drake Insurance Ltd. v. All American Insurance Co.*, 256 F.3d 587, 588 (7th Cir.2001), maj. op. at 692–93, in which the reinsurance contract stated that the policy would "follow all terms clauses and conditions on the original contract" and specifically referenced the "Arbitration contract." Again, the court's holding was limited to the language at issue in that case—which is entirely absent in this case—for its conclusion, and the court made no broad statements applicable to other cases in which the parties used no such terminology. Likewise, in *Boeing Co. v. Agricultural Insurance Co.*, 2005 WL 2276770, at *7 (W.D.Wash. Sept.19, 2005), *see* maj. op. at 692–93, the court noted that the follow-form policies at issue "expressly incorporated the arbitration provision" of the underlying policy, and it made no broad statements regarding follow-form policies. In fact, the *Boeing* court declined to force the excess insurers to join arbitration precisely because the contracts at issue were silent on the topic of consolidated arbitrations. *Boeing Co.*, 2005 WL 2276770, at *7 & n. 8.

Finally, in *Safety National Casualty Co. v. Cinergy Corp.*, 829 N.E.2d 986, 990, 1010 (Ind.Ct.App.2005), *see* maj. op. at 693, the excess insurer contracts contained their own arbitration clauses, independent of the underlying contract. Under such circumstances, unlike in the present case, compelling excess insurers to arbitrate seems well in keeping with their contractual arrangements.

At most, these cases stand for the proposition that when the language of a follow-form

contract incorporates the underlying policy in certain respects, the contract incorporates the underlying policy in those respects. But here, the language incorporates only the coverage of the Great American policy, not the arbitration provision. In this case, the "intent and reasonable expectations of the parties," *Thompson,* 84 P.3d at 501, was that of limited incorporation, and the majority presents no justification for upsetting those expectations.

But even if the majority were correct that a follow-form contract incorporates all of the provisions of the related policy absent an express disclaimer, the language of the endorsement in this case constitutes such an express statement. As noted above, the language only incorporates the Great American policy's "coverage," and states that "all other terms and conditions ... remain[ ] unchanged." The majority finds the "coverage" language inadequate because it "does not provide any definition of the coverage it endorses." Maj. op. at 691. And the majority dismisses the "remain[ ] unchanged" language as "ambiguous," "boilerplate," "nebulous," and "incapable of interpretation by reference to any provision of either insurance policy." *Id.* at 693. Contrary to the majority's descriptions, however, the language is actually quite straightforward: the endorsement incorporates coverage, but everything else in National Union's policy stays the same. Again, the majority labors to avoid this natural reading of the endorsement's language.

Finally, the majority invokes the canons of construction that ambiguous provisions should be interpreted in favor of the insured and in favor of arbitration. *See id.* Those canons, however, are rules of last resort that should be applied only after all other aids to construction have failed to resolve the ambiguity. *See BP Am. Prod. Co. v. Patterson,* 185 P.3d 811, 814 (Colo.2008) (citations omitted). The language in this case does not give rise to such a stubborn ambiguity; on the contrary, as noted above, it simply means what it says.

Moreover, in this case, it is significant that the two canons point in the same direction—that is, in favor of the insured who wants to arbitrate. But in many cases, it is the insured (not the insurer, as in this case) who wishes to avoid arbitration. The majority's approach in effect creates a default rule of contract interpretation that follow-form policies will always incorporate the provisions of the related policy, including arbitration clauses, absent precise language to the contrary. In my view, the majority's rule may have troubling implications for insureds like Radil. For these reasons, I respectfully dissent from the majority's conclusion that the National Union policy incorporated the arbitration provision from the Great American policy.

I am authorized to state that Justice COATS joins in this opinion concurring in part and dissenting in part.